FILED
CLERK, U.S. DISTRICT COURT

JUN 15 2010

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JUAN VALENZUELA,<br><br>    Petitioner,<br><br>  v.<br><br>L. SMALL, Warden,<br><br>    Respondent. | Case No. CV 10-02428 DSF (AN)<br><br>**ORDER DISMISSING HABEAS PETITION AS TIME-BARRED** |

Before the court is a Petition for Writ of Habeas Corpus ("Petition") brought by Juan Valenzuela ("Petitioner"), a state prisoner proceeding *pro se*. For the reasons discussed below, the Petition is dismissed with prejudice because the court finds it is time-barred.

## I. BACKGROUND

The pending Petition, which the clerk filed on April 2, 2010, raises eight claims directed at Petitioner's September 22, 1997 conviction for first degree murder, second degree murder, assault with a deadly weapon or by means likely to cause great bodily injury, use of a firearm, and other enhancements that he sustained in the California Superior Court for Los Angeles County (case no. NA025820). Pursuant to the court's duty to screen § 2254 petitions, the Magistrate Judge found it plainly appeared from

the face of the Petition and relevant state court records that this action was barred by the one-year statute of limitations of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. §2244(d)(1)(A). Accordingly, on April 26, 2010, the Magistrate Judge issued an order to show cause that notified Petitioner the action appeared to be time-barred absent some basis for tolling or an alternative start to AEDPA's one-year limitations period under 28 U.S.C. § 2244(d)(1)(B)-(D). (4/26/10 Order to Show Cause re Dismissal of Habeas Petition as Time-barred ("OSC") (dkt. 5).) The OSC discussed the various bases for tolling and directed Petitioner to show cause why the action should not be dismissed as time-barred by filing a written response no later than April 7, 2010. (OSC at 4-10.) The OSC warned Petitioner that his failure to file a timely response to the OSC would result in a waiver of his right to respond to the OSC, and that his Petition would be dismissed with prejudice as time-barred without further notice. (OSC at 10.) After being granted one extension, Petitioner responded to the OSC by filing a 55-page declaration (dkt. 12), which is construed and referred to as his "Response." The matter now stands submitted.

## II. DISCUSSION

### A. Standard of Review

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, requires a judge to "promptly examine" a habeas petition and "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." Local Rule 72-3.2 of this court also provides "[t]he Magistrate Judge promptly shall examine a petition for writ of habeas corpus, and if it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief, the Magistrate Judge may prepare a proposed order for summary dismissal and submit it and a proposed judgment to the District Judge." C.D. Cal. R. 72-3.2. Further, an untimely habeas petition may be dismissed *sua sponte*, however, the district court must give the

petitioner adequate notice and an opportunity to respond before doing so. *Day v. McDonough*, 547 U.S. 198, 209-10, 126 S. Ct. 1675 (2006); *Herbst v. Cook*, 260 F.3d 1039, 1043 (9th Cir. 2001).

## B. Statute of Limitations

The Petition is governed by AEDPA because it was filed after April 24, 1996, AEDPA's enactment date. 28 U.S.C. § 2244(d)(1); *see Lindh v. Murphy*, 521 U.S. 320, 327-37, 117 S. Ct. 2059 (1997). In most cases, the limitations period begins to run from "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). However, where the conviction became final before AEDPA's enactment, a petitioner had until April 24, 1997, to file a federal habeas petition. *See Lindh*, 521 U.S. at 322 (the AEDPA was signed into law on April 24, 1996); *see also Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (AEDPA's one-year grace period for challenging convictions finalized before AEDPA's enactment ended on April 24, 1997).

The face of the Petition and relevant state court records[1] establish the following relevant facts. Petitioner sustained his underlying conviction on September 22, 1997, and was sentenced on October 15, 1997. (Pet. at 2.[2]) The California Court of Appeal,

---

[1] The court takes judicial notice of Petitioner's records in the state appellate courts, which are available on the Internet at http://appellatecases.courtinfo.ca.gov ("state court records"). *See Smith v. Duncan*, 297 F.3d 809, 815 (9th Cir. 2002) (federal courts may take judicial notice of relevant state court records in federal habeas proceedings).

[2] Petitioner did not consecutively number the pages of the Petition and the attachments in the manner required by Local Rule 11-3.3. For sake of clarity, the court cites to the pages of the Petition by referring to the electronic pagination furnished by the court's official CM/ECF electronic document filing system. The exhibits supporting the Petition were also numbered by the court's CM/ECF filing system so the court cites to the page numbers of the exhibits separately. In addition to separately numbering the exhibits, the electronic filing system numbered the
(continued...)

Second Appellate District, Division Five, affirmed the judgment on direct appeal on December 23, 1998 (case no. B117471). (Pet. at 2-3; Exs. at 5-18; state court records.) Petitioner never filed a petition for review in the California Supreme Court or for certiorari with the United States Supreme Court. (Pet. at 3.) Therefore, for purposes of AEDPA's limitations period, his conviction became final on February 1, 1999, the fortieth day after the California Court of Appeal affirmed the judgment of conviction. *See* CAL. CT. R. 8.366(b)(1); 8.500(e)(1); *Waldrip v. Hall*, 548 F.3d 729, 735 (9th Cir. 2008); *Smith v. Duncan*, 297 F.3d at 812-13. The statute of limitations then started to run the next day, February 2, 1999, and ended a year later on February 1, 2000. 28 U.S.C. § 2244(d)(1)(A); *see Patterson*, 251 F.3d at 1245-47 (holding limitations period begins to run on the day after the triggering event pursuant to Fed. R. Civ. P. 6(a)).

Petitioner did not constructively file his pending Petition until March 28, 2010[3/] -- 3,708 days (more than 10 years) after the expiration of the limitations period.

Accordingly, absent some basis for tolling or an alternative start date to AEDPA's limitations period under 28 U.S.C. § 2244(d)(1), the pending Petition is time-barred.

///

///

---

[2/] (...continued) attachments to the Petition in two sets (1-100 and 1-53). The court designates the second set (pages 1-53) as "set two."

[3/] Pursuant to the "mailbox rule," a *pro se* prisoner's habeas petition is deemed to be filed on the date the prisoner delivers the petition to prison authorities for mailing to the clerk. *Houston v. Lack*, 487 U.S. 266, 270-71, 108 S. Ct. 2379 (1988); *Huizar v. Carey*, 273 F.3d 1220, 1222 (9th Cir. 2001). The pending Petition was filed by the clerk on April 2, 2010. (Pet. at 1.) However, for purposes of the timeliness analysis, the court gives Petitioner the benefit of the doubt by assuming he delivered the Petition to the prison mail room clerk for filing on March 28, 2010, the date it appears he signed the Petition and the attached proof of service.

## C. Statutory Tolling

AEDPA includes a statutory tolling provision that suspends the limitations period for the time during which a "properly-filed" application for post-conviction or other collateral review is "pending" in state court. 28 U.S.C. § 2244(d)(2); *Waldrip*, 548 F.3d at 734; *Bonner v. Carey*, 425 F.3d 1145, 1148 (9th Cir. 2005). An application is "pending" until it has achieved final resolution through the state's post-conviction procedures. *Carey v. Saffold*, 536 U.S. 214, 220, 122 S. Ct. 2134 (2002). The limitations period is not tolled between the time a final decision is issued on direct state appeal and the time a state collateral challenge is filed because there is no case "pending" during that interval. *Thorson v. Palmer*, 479 F.3d 643, 646 (9th Cir. 2007); *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999). On collateral review, however, "intervals between a lower court decision and a filing of a new petition in a higher court," when reasonable, fall "within the scope of the statutory word 'pending'" thus tolling the limitations period. *Saffold*, 536 U.S. at 221, 223; *Evans v. Chavis*, 546 U.S. 189, 192, 126 S. Ct. 846 (2006) (*citing Saffold*).

Further, to qualify for statutory tolling during the time the petitioner is pursuing collateral review in the state courts, his *first* state habeas petition must be constructively filed *before*, not after, the expiration of AEDPA's one-year limitations period. *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2254 does not permit the reinitiation of the limitation period that has ended before the state petition was filed"); *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) ("A state-court petition [] that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled").

The Petition, attached exhibits, and relevant state court records establish Petitioner filed two habeas petitions in the trial court, one habeas petition in the state court of appeal (case no. B212038), and two habeas petitions in the California Supreme Court (case nos. S169648, S176616), all of which were denied. (Pet. at 3-5;

set two at 30-50; Exs. at 112-21; state court records.). However, the first of those petitions was not filed until November 27, 2007, seven years and nearly ten months after the expiration of the limitations period on February 1, 2000. (Pet., set two at 30; Exs. at 113.) As a result, Petitioner is not entitled to statutory tolling for any of his state habeas petitions because they were all filed long after the limitations period expired. *See Jiminez*, 276 F.3d at 482; *Webster*, 199 F.3d at 1259.

The Petition, attached exhibits, and relevant state court records establish Petitioner is not entitled to any statutory tolling of the limitations period, and Petitioner has not demonstrated otherwise despite having an opportunity to do so.

### D. Alternative Start of the Statute of Limitations

#### 1. State-Created Impediment

In rare instances, AEDPA provides that its one-year limitations period shall run from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). Asserting that the statute of limitations was delayed by a state-created impediment requires establishing a due process violation. *Lott v. Mueller*, 304 F.3d 918, 925 (9th Cir. 2002). Thus, a claim under this provision "must satisfy a far higher bar than that for equitable tolling." *Ramirez v. Yates*, 571 F.3d 993, 1000 (9th Cir. 2009). Petitioner's filings do not set forth any facts that show he is entitled to relief under this provision.

#### 2. Newly Recognized Constitutional Right

AEDPA provides that, if a claim is based upon a constitutional right that is newly recognized and applied retroactively to habeas cases by the United States Supreme Court, the one-year limitations period begins to run on the date which the new right was initially recognized by the Supreme Court. 28 U.S.C. § 2244(d)(1)(C). Petitioner's filings do not set forth any facts that show he is entitled to relief under this provision.

### 3. Discovery of Factual Predicate

AEDPA also provides that, in certain cases, its one-year limitations period shall run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D); *Hasan v. Galaza*, 254 F.3d 1150, 1155 (9th Cir. 2001). Petitioner's filings do not set forth any facts that show Petitioner is entitled to an alternate start date to the limitations period based upon the late discovery of the factual predicate.

### E. Equitable Tolling

The United States Supreme Court has not yet decided whether AEDPA's limitations period allows for equitable tolling but it has assumed without deciding that it is available where the parties have agreed. *Lawrence v. Florida*, 549 U.S. 327, 336, 127 S. Ct. 1079 (2007) ("We have not yet decided whether § 2244(d) allows for equitable tolling."); *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807 (2005) ("We have never squarely addressed the question whether equitable tolling is applicable to AEDPA's statute of limitations").

Although the Ninth Circuit has found that equitable tolling is available, *Harris v. Carter*, 515 F.3d 1051, 1054 n.4. (9th Cir. 2008), it has cautioned, "[e]quitable tolling is justified in few cases," and that "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003); *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (same). "This high bar is necessary to effectuate the 'AEDPA's statutory purpose of encouraging prompt filings in federal court in order to protect the federal system from being forced to hear stale claims.'" *Mendoza v. Carey*, 449 F.3d 1065, 1068 (9th Cir. 2006). Further, "[e]quitable tolling determinations are 'highly fact-dependent.'" *Id.* The petitioner "bears the burden of showing that equitable tolling is appropriate." *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005).

///

Moreover, in *Pace*, the Supreme Court clearly established that "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418; *Lawrence*, 549 U.S. at 336. *Pace*'s diligence prong requires the petitioner to show he engaged in reasonably diligent efforts to file his § 2254 petition throughout the time the limitations period was running. *Mendoza*, 449 F.3d at 1070; *see also Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) ("[T]he party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll" and "extraordinary circumstances prevented him from filing his petition on time."). The petitioner must also demonstrate that he exercised reasonable diligence in attempting to file his habeas petition after the extraordinary circumstances began otherwise the "link of causation between the extraordinary circumstances and the failure to file [is] broken." *Spitsyn*, 345 F.3d at 802. *Pace*'s "extraordinary circumstances" prong requires the petitioner to "additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances made it impossible to file a petition on time." *Ramirez*, 571 F.3d at 997 (internal quotations and citations omitted).

In his Response, Petitioner reiterates arguments he made in a document attached to the Petition; specifically, that he is entitled to equitable tolling because of "egregious attorney misconduct" by Douglas Melson, who he retained in 1999 to file a state habeas petition. (Pet. at 76-79; Resp. at 1-9.) Petitioner's attached exhibits indicate that, on January 29, 1999, Petitioner retained Melson to file a habeas petition in the trial court, however, it appears Melson failed to do despite his assurances to the contrary in 1999 and 2000. Then, after a number of inquiries made by Petitioner's sister and Petitioner over the course of nearly seven years, it was only after Petitioner made a complaint to the state bar that Melson then filed the November 27, 2007 state habeas petition on Petitioner's behalf without consulting Petitioner. (Pet. at 76-79, 81-

82, 84-100; set two at 1-16, 18-20, 22, 24-25, 30-50; Exs. at 31-32; Resp. at 1-9, Resp., Exs. 1-5.) Arguing that the facts of this case are similar to the facts of *Spitsyn*, Petitioner contends Melson's actions and inactions, including the failure to return his transcripts, amounted to "sufficiently egregious performance of counsel" that constitutes an extraordinary circumstance justifying equitable tolling. *Spitsyn*, 345 F.3d at 800; (Pet. at 76-79; Resp. at 1-9.)

In *Spitsyn*, the petitioner's mother hired an attorney, Huffhines, to file a federal habeas petition nearly a year before AEDPA's deadline but Huffhines failed to do so. After a period of inactivity, Spitsyn and his mother made three inquiries to Huffhines, and also filed two grievances with the Washington State Bar. Eventually, Spitsyn wrote Huffhines again, this time "indicating that the representation had been terminated and requesting" Huffhines return his file. Huffhines did not respond or return the file until after the limitations period expired, and was ultimately reprimanded by the state bar for violating state rules of professional conduct. Spitsyn then filed a federal habeas petition in *pro se* 226 days after the statute of limitations had run and approximately six months after his file was returned. *Spitsyn*, 345 F.3d at 798-99. A panel of the Ninth Circuit held that "the misconduct of Spitsyn's attorney was sufficiently egregious to justify equitable tolling of the one-year limitations period under AEDPA," but nevertheless remanded the case for a determination of whether Spitsyn had exercised reasonable diligence such that enough equitable tolling was warranted to render his petition timely. *Id.* at 801-02. The court noted "in particular that the record does not indicate why Spitsyn did not file his petition until September, when Huffhines returned his files in April." *Id.* at 802.

The foregoing establishes Petitioner has not met, and cannot meet, the "very high" burden to justify equitable tolling in this case. *Id.* at 799. Specifically, Petitioner has not shown he had any intention of filing a *federal* habeas petition before the statute of limitations expired on February 1, 2000, or at any time before 2010. Unlike *Spitsyn*, where the attorney was specifically hired to file a *federal* habeas

petition before the AEDPA deadline and failed to do so, Petitioner has shown only that he hired Melson to file a *state* habeas petition in the trial court, *id.* at 798-99, and that he was not concerned with anything but that state habeas petition for years after the expiration of AEDPA's limitations period.

Petitioner's attached exhibits include a letter dated November 17, 2006 -- nearly seven years after AEDPA's limitations period expired. In this letter, Petitioner made a polite request to Melson for his trial transcripts so he could "file a habeas petition" based on "some new evidence" which "came to [his] attention." (Resp., Ex. 3.) Whether or not Petitioner had already made repeated efforts to contact Melson regarding the status of his original state habeas action, there is no indication in this letter or anywhere else that Melson had withheld any transcripts, or that Petitioner had any intention to file a federal habeas petition, before November 2006.

Additionally, even after November 2006, Petitioner's attached exhibits and his Response reveal that, by September 2007, he was fully aware that Melson had not filed the original state habeas petition, and the trial court had provided him with the transcripts he sought. (Pet. at 22, 27-28; Resp. at 4.) Yet, Petitioner's only action upon receiving the transcripts was to file his own *state* habeas petition in the trial court. (Resp. at 4.) He did not file his pending federal habeas petition until March 2010, approximately 2½ years later. Thus, in this case "there is no indication that" had Melson properly handled the state habeas matter he was hired to file, or had he more diligently returned any relevant transcripts, Petitioner "would have filed a federal habeas petition within the one-year limitations period." *See Randle v. Crawford*, --- F.3d ----, no. 08-15657, 2010 WL 1930235, at *10 (9th Cir. May 14, 2010) (distinguishing *Spitsyn* and rejecting petitioner's argument for equitable tolling due to his attorney's failure to return his file sooner on the basis that the petitioner "sought his legal files in order to file a state habeas petition").

The foregoing demonstrates Petitioner has not established a causal link between Melson's handling of the state habeas matter and his own failure to file a federal

Page 10

habeas petition before February 1, 2000, particularly a link that made such a filing impossible. *Ramirez*, 571 F.3d at 997. Further, even if Petitioner had shown some causal link in this case, he has failed to show he exercised reasonable diligence in attempting to file his federal habeas petition after the extraordinary circumstances occurred. *Mendoza*, 449 F.3d at 1070; *McGinnis*, 208 F.3d at 17; *Spitsyn*, 345 F.3d at 802. Petitioner's filings do not show he is entitled to equitable tolling in this case.

### F. Actual Innocence/Miscarriage Of Justice

In his Response, Petitioner also alleges that there is newly discovered evidence of his actual innocence. More specifically, he claims that one of the arresting officers in his case, Julio Alcaraz, fabricated his testimony. In support of his assertion, Petitioner attaches copies of newspaper articles that appeared in the January 28 and 29, 2000 editions of the Long Beach Press-Telegram about a Long Beach police officer named Julio Alcaraz who was charged in a federal criminal complaint with taking cocaine from an undercover federal agent, who Alcaraz thought was a drug dealer, and then reselling the drugs to another drug dealer who was an acquaintance. (Resp., Ex. 6 at 51-54.) According to the articles, Alcaraz committed the offense on Thursday, January 27, 2000, and was arrested several hours later. (Resp., Ex. 6 at 53-54.) The news articles also report that, the next day, January 28, 2000, Alcaraz had his initial appearance before a magistrate judge of this court. (*Id.* at 54.) Assuming the news articles refer to the same Alcaraz who testified at his Petitioner's trial, Petitioner appears to contend that, had he known about the charge against Alcaraz, he could have used it to impeach the testimony Alcaraz gave at Petitioner's trial. (Resp. at 10-11.)

Under the actual innocence gateway of *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851 (1995), a petitioner's procedurally barred claim may be considered on the merits if his claim of actual innocence is sufficient to implicate a fundamental miscarriage of justice. *Majoy v. Roe*, 296 F.3d 770, 775-76 (9th Cir. 2002). To establish a miscarriage of justice, the petitioner must proffer "evidence of innocence strong

enough that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Griffin v. Johnson*, 350 F.3d 956, 960-61 (9th Cir. 2003); *cf. Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1604 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' . . . or that he is 'actually innocent.'"). Further, Petitioner must first furnish "new reliable evidence . . . that was not presented at trial." *Schlup*, 513 U.S. at 324. This evidence must demonstrate that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327; *House v. Bell*, 547 U.S. 518, 536-37, 126 S. Ct. 2064, (2006). "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324.

Setting aside Petitioner's failure to demonstrate the actual innocence gateway provides a basis for overcoming his <u>untimeliness</u>, as opposed to a procedural default, *see Majoy*, 296 F.3d at 776, the court finds he has fallen grossly short of making the required showing. Petitioner has failed to present sufficient evidence to show that it is more likely than not that no reasonable juror would have convicted him, *Sistrunk v. Armenakis*, 292 F.3d 669, 673, 677 (9th Cir. 2002), or that this is one of the "extraordinary" cases "rais[ing] sufficient doubt about [his] guilt" such that it "undermine[s] confidence in the result of the trial." *House*, 547 U.S. at 537. The news articles themselves are hearsay and do not constitute new reliable evidence. Further, assuming the Officer Alcaraz mentioned in the news articles and the Officer Alcaraz who testified at Petitioner's trial are one and the same, Petitioner has not brought forth any new reliable evidence that shows Officer Alcaraz gave fabricated or untrustworthy testimony at Petitioner's trial.

In this regard, the court finds Petitioner's newly discovered evidence/actual innocence claim is factually frivolous. Petitioner could not have used the information

about Officer Alcaraz that is identified in the news articles to impeach Officer Alcaraz's testimony in Petitioner's case because the information did not exist when Petitioner's trial took place. Specifically, Petitioner's own statement of the facts set forth in his Petition establishes he, along with Elias Tapia, Jr., Petitioner's fellow gang member and co-defendant, committed the crimes in August of 1995, and that they were charged by way of an information filed on December 6, 1995. (Pet. at 14-28.) After two mistrials, their third trial commenced on September 3, 1997, and the jury found them guilty for their commitment offenses on September 22, 1997. (Pet. at 2, 14.) As discussed above, the aforementioned news articles that Petitioner relies upon reports that Officer Alcaraz was not arrested and charged until January 28, 2000[4/] -- almost four years after Petitioner committed his underlying offenses and more than two years after Petitioner's third trial and conviction. By that time, Petitioner's judgment of conviction had already become final on direct review. (Pet. at 2-3.)

Further, Petitioner's own version of the facts shows Officer Alcaraz's testimony in his case was collateral to testimony given by three independent eye witnesses; two of whom personally observed Petitioner and Tapia assault their two murder victims and the third witness was their third victim who survived their assault. (*See* Pet. at 14, 16-25; dkt. 1-1 at 36-40.)

Based upon the foregoing, the court finds Petitioner's alleged newly discovered evidence claim is not based upon new reliable evidence that undermines confidence in the result of the trial. *Schlup*, 513 U.S. at 324; *House*, 547 U.S. at 537. Petitioner has failed to make an adequate showing under the stringent *Schlup* standard that is required to override the AEDPA's statute of limitations.

The face of the Petition and state court records establish Petitioner does not

---

[4/]   The court takes judicial notice of its own records that reflect the Officer Alcaraz identified in the proffered news articles ultimately pled guilty and was sentenced to prison on November 30, 2001. *United States v. Julio Alvarez Alcaraz*, no. CR 00-131 DDP, judgment and commitment order (dkt. 72) (C.D. Cal.).

qualify for *Schlup*'s actual innocence gateway exception, and he has failed to show otherwise despite having an opportunity to do so.

Accordingly, the pending Petition is barred by the statute of limitations.

## O R D E R

Based upon the foregoing, the court finds the Petition is time-barred. Further, by way of the OSC, the court finds Petitioner has received notice and an adequate opportunity to show cause why the Petition should not be dismissed as time-barred. ACCORDINGLY, IT IS HEREBY ORDERED THAT the reference to the Magistrate Judge is vacated and the Petition is dismissed with prejudice. The clerk is directed to enter judgment dismissing this action with prejudice and notifying Petitioner of said judgment. Any and all pending motions are terminated.

DATED: June 14, 2010

DALE S. FISCHER
UNITED STATES DISTRICT JUDGE

Presented by:

Arthur Nakazato
United States Magistrate Judge